IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'25 FEB 13 PM 4:39

| | |
|---|---|
| DA'QUAN LITTLE,<br><br>  Plaintiff,<br><br>v.<br><br>WALTER DRILL, *CO II*,<br>SUNDAY BENSON, *CO II*,<br>GREGORY WERNER, *Warden*,<br><br>  Defendants. | Civil Action No. 1:23-cv-2914-LKG<br><br>Dated: February 13, 2025 |

### MEMORANDUM OPINION

Self-represented plaintiff Da'Quan Little, a state inmate currently confined at North Branch Correctional Institution ("NBCI"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983, against Warden Gregory Werner and Correctional Officers Walter Drill and Sunday Benson. ECF No. 1. Little seeks monetary damages for an incident that occurred on December 9, 2022, when he was in an altercation with the correctional officers named as Defendants. *Id.*

In response to the Complaint, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 20. Little was advised of his right to file an opposition response to Defendants' motion and of the consequences for failing to do so. ECF No. 22. Little sought and was granted extensions of time to file his opposition response (ECF Nos. 24, 26, 27, 31)[1] but has failed to file anything further. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion shall be **GRANTED**.

**I.    Background**

Little claims that on December 9, 2022, while he was detained at Maryland Correctional Institution-Hagerstown ("MCI-H"), Officer Benson pointed his finger in Little's face. ECF No. 1 at 1; ECF No. 3 at 2; ECF Nos. 6, 7, 14. Little responded to Benson that that was "not how you speak to someone" but Benson simply said he does whatever he wants. ECF No. 1 at 1; ECF No.

---

[1] Within Little's request for extension of time (ECF No. 27), he provided additional information regarding the incident, which has been considered by the Court in resolving the dispositive Motion.

3 at 2. Benson continued to point his finger in Little's face. Little then continued down the tier steps and passed Office Drill who punched Little on the left side of his face with a closed fist. ECF No. 1 at 1; ECF No. 3 at 3. Benson and Drill pulled Little into a chokehold and he could not breathe. *Id*. Little was taken to another tier in handcuffs where he was tackled to the ground by other officers who repeatedly kicked and punched him. ECF No. 1 at 2; ECF No. 3 at 3. Little alleges that the foregoing violated division of correction directives and was racially motivated. *Id*. Little states that Wardens are to ensure that violations are promptly reported to the Commissioner. ECF 3 at 3. He explains that he refused medical attention. *Id*. Little seeks compensatory damages. *Id*. at 4.

   The uncontroverted records reflect that on the morning of December 9, 2022, Little, who was then incarcerated at MCI-H serving a 24 year term of confinement for armed robbery (ECF No. 20-3 at 4), came onto the tier with a pass to go to case management. ECF No. 20-3 at 16; ECF No. 20-8 at 51 (certified trial transcript Little's sworn testimony). Little also had a pass that belonged to another inmate. ECF No. 20-3 at 11, 16; ECF No. 20-8 at 51-52; ECF No. 20-8 at 19-20 (Benson's sworn testimony); ECF No. 20-8 at 41 (CO II Nyambi's sworn testimony). Little gave that pass to CO II Nyambi, who told Little it was a week old pass and for another inmate. ECF No. 20-3 at 16; ECF No. 20-8 at 41. Little then showed the pass to Benson who ordered Little surrender the other inmate's pass as inmates are not permitted to possess the pass of another inmate. ECF No. 20-3 at 11; ECF No. 20-8 at 19-20; ECF No. 20-12, ¶ 3 (Benson Decl.). Benson repeatedly ordered Little to relinquish the pass but Little refused and began pointing his finger in Benson's face and cursing. ECF No. 20-3 at 11; ECF No. 20-8 at 19; ECF No. 20-8 at 41, 43; ECF No. 20-12, ¶ 3. Little argued aggressively with Benson and refused multiple orders to leave the area and proceed to his case manager. ECF No. 20-8 at 19; ECF No. 20-3 at 18 (Notice of Inmate Rule Violation), 16 (Information Report written by Nyambi); ECF No. 20-12, ¶ 3.

   As Little argued with Benson, Drill, the Officer in Charge of the Housing Unit, saw Little's escalating behavior and approached the area. ECF No. 20-3 at 5, 7, 9, 16; ECF No. 20-8 at 29-30, 43; ECF No. 20-11, ¶ 3 (Drill Decl.). When Benson turned his back on Little to unlock the stairwell grill Little stepped aggressively toward Benson and took a stance as though he were

going to strike Benson from behind.[2] ECF No. 20-3 at 5,7, 9, 11, 16; ECF No. 20-8 at 20-21; ECF No. 20-8 at 30, 43; ECF No. 20-11, ¶ 3. Benson testified that he believed Little tried to strike him. ECF No. 20-8 at 21, 27; ECF No. 20-8 at 32. Drill, fearing for the safety of Benson, attempted to restrain Little. ECF No. 20-3 at 5, 7, 9. 16; ECF No. 20-8 at 32, 35, 37; ECF No. 20-11, ¶ 3. Drill explains that he attempted to restrain Little and used force in response to Little's assaultive behavior. ECF No. 20-11, ¶ 5. However, Little broke free of Drill's grasp and turned toward Drill and attempted to strike him with closed fists. ECF No. 20-3 at 5, 7, 9, 11, 16; ECF No. 20-8 at 20-21; ECF No. 20-8 at 32-33; ECF No. 20-8 at 53; ECF No. 20-11, ¶ 3. Benson tried to intervene in the altercation and to gain control of Little but was also struck by Little. ECF No. 20-3 at 5, 7, 9; ECF No. 20-8 at 16-18, 20, 21, 25, 53; ECF No. 20-12, ¶ 3. Little admitted that once the physical altercation began, he was focused on hitting Drill. ECF No. 20-8 at 53-55. During the altercation, Drill was knocked to the ground and his left middle finger was broken and dislocated. ECF No. 20-8 at 33-37; ECF No. 20-11, ¶ 6.

Drill and Nyambi were able to call for assistance and other officers responded to the area as Drill and Benson continued their efforts to take control of Little and secure handcuffs. ECF No. 20-3 at 5, 7, 9, 11, 16; ECF No. 20-11, ¶ 3. The responding officers were able to gain control over Drill, handcuff him, and escort him directly to medical. ECF No. 20-3 at 5, 7, 9, 11, 18. Little had superficial scratches on his face and signed a release and waiver refusing any further assessment or treatment. *Id.* at 5, 7, 21-24.

As a result of the incident, Little was issued a Notice of Inmate Rule Violation charging him with committing assault or battery on staff. ECF No. 20-3 at 18, 40. Little refused to provide a statement regarding the incident. ECF No. 20-3 at 17. Ultimately, he pled guilty pursuant to a plea agreement and was sanctioned to 180 days segregation and the loss of 180 days good conduct credits. *Id.* at 43, 46. The Warden reviewed the sanctions and affirmed the decision. *Id.* at 55. Little waived his right to appeal to the Inmate Grievance Office. *Id.* at 43, 46.

The incident was also investigated by Sgt. Toston of the Intelligence and Investigative Division ("IID"). ECF No. 20-4. Sgt. Toston reviewed the reports prepared as a result of the

---

[2] At trial Little testified that he merely followed behind Benson so that he could go to his pass. ECF No. 20-8 at 52-53. He also testified that he suffered a black eye and fracture on the right side of his face (ECF No. 20-8 at 54) and denied refusing medical treatment. *Id.* at 56.

incident. *Id.* at 5. He also interviewed Drill and Benson who relayed information consistent with their reports. *Id.* at 6. Additionally, Sgt. Toston reviewed the video surveillance of the incident. *Id.* As a result of his investigation Sgt. Toston obtained criminal summons from the Washington County District Court Commissioner charging Little with two counts of second degree assault. *Id.*; ECF No. 20-3 at 38; ECF No. 20-4 at 4, 44-49; ECF No. 20-7. After trial, Little was convicted of assaulting Benson and sentenced to four years' incarceration. ECF No. 20-7 at 9-10. He was found not guilty of assaulting Drill. *Id;* ECF No. 20-8 at 63-66 (trial court finding of facts and verdict). Little appealed to the Circuit Court for Washington County, Maryland, where he pled guilty to the assault on Benson and agreed to a statement of facts which included, among other things that:

> [Benson] instructed [Little] to turn over the pass. Mr. Little refuses orders three times to turn over the pass, then started pointing his finger in Officer Benson's face. Officer Benson stepped away from Mr. Little at that time, went to secure the stairway grille turning away from Mr. Little. At that time, Mr. Little raised a fist, attempted to punch Mr. –or Officer Benson. This was observed by two other officers. Another officer intervened, a scuffle ensued.

ECF No. 20-10 at 12. As a result of the plea agreement Little received a reduced sentence of two years. ECF No. 20-10; ECF No. 20-9.

Defendants provide the surveillance video of the altercation (ECF No. 20-5, filed separately) and aver that Little reviewed the video on May 6, 2024. ECF No. 23-1 at ¶ 4. The video substantially confirms the documentary evidence. It shows Little arguing with Benson and Benson then moving toward the grille door. Little approached the area where Benson walked but there is no video coverage of the actual grille area. Drill comes into the video field as Little be approached Benson from behind and looming very close to him. Drill then grabbed at Little, who escaped his hold. Little and Drill then exchanged punches. Other officers arrived on the scene and Little was handcuffed. ECF No. 20-5 (Video filed separately).

## II.    Standard of Review

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.

1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens*

*Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

Defendants assert they are entitled to dismissal because: Little failed to exhaust administrative remedies; they are immune from suit in their official capacities; Werner is entitled to dismissal; Benson is entitled to summary judgment; Little fails to state a Fourteenth Amendment Equal Protection claim; Little's claims of excessive force and due process are barred by the doctrines of res judicata and collateral estoppel; the amount of force used was not excessive; the Defendants are not liable for an alleged denial of medical care; and they are entitled to qualified immunity. ECF No. 20-1.

#### A. Exhaustion

Defendants assert that Little's Complaint should be dismissed because he failed to exhaust the required grievance process. ECF No. 20-1. If Little's claims were not properly presented through the Administrative Remedy Procedure ("ARP"), they must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Critically, the Fourth Circuit has held that "when there is an Intelligence and Investigative Division [("IID")] investigation into an officer's use of force, Maryland's scheme for administrative remedies is unavailable." *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023). "Under Maryland law, an inmate cannot successfully file an administrative grievance over an event that is the subject of an Intelligence and Investigative Division investigation. If they do, that grievance will automatically be dismissed as procedurally deficient." *Crowder* 79 F.4th at 380; *see also Sheppard v. Parson*, Civ. No. PX-21-1342, 2024 WL 943436, at *3 (D. Md. Mar. 4, 2024) ("Because [plaintiff's] ARP was procedurally dismissed while the IID investigation was pending, administrative remedies were unavailable to him. The Court will not grant judgment in Defendants' favor on exhaustion grounds.").

Given the IID investigation, the Court cannot say on the record before it that the administrative grievance process was available to Little regarding the events at issue. Accordingly, the Court will not dismiss the case for failure to exhaust administrative remedies.

### B. Eleventh Amendment

Defendants Drill, Benson, and Werner correctly argue that they are immune from suit under the Eleventh Amendment to the United States Constitution for claims brought against them in their official capacities. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). As such, Little's clams asserted against Drill, Benson and Werner in their official capacities are dismissed.

### C. Respondeat Superior

Turning next to the claim against Defendant Warden Gregory Werner, he rightly argues that he must be dismissed from this suit because even construing the Complaint most favorably to Little, Werner played no role in the incident forming the basis of the excessive force claim. Section 1983 extends liability only to persons acting "under color of law" whose acts or omissions violate the plaintiff's constitutional or statutory rights. 42 U.S.C. § 1983 ("[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights[.]"). *Gellert v. Distr. Ct. of Md.*, No. PX-20-3004, 2021 WL 37659, at *2 (D. Md. Jan. 5, 2021) (person under 1983 must

be an individual or bodies politic or corporate). Supervisors cannot be held accountable under § 1983 for the constitutional violations of their subordinates solely under a principal-agent liability theory. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability for constitutional violations "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, a supervisor may be held liable for constitutional violations of a subordinate where the evidence shows that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury that the plaintiff had suffered. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

When viewing the Complaint facts most favorably to Little, nothing makes plausible that Werner played any meaningful role in the alleged excessive force, denial of equal protection or medical care. The only mention of Werner in the Complaint is that Werner was the Warden at MCI-H responsible for reporting events to the Commissioner. But nothing in that allegation supports Werner's personal involvement in any constitutional violations. Given this, Defendant Werner is dismissed from this suit.

    D.    **Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

8

The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, the record reflects that Little refused orders by Benson to turn over the pass of another inmate and to move along to his appointment with case management. Drill observed Benson and Little in a heated exchange and when Benson turned away from Little to address other duties, Drill observed Little move toward Benson and take a stance which he believed threatened Benson. Benson and another officer, each provided evidence that they too believed Little moved in an aggressive manner toward Benson. Drill attempted to restrain Little to prevent what he believed to be an imminent attack on Benson. Little broke free of Drill's hold and began to swing at Drill. The two exchanged punches while Benson also attempted to intervene. A signal 13 was called which required other officers to respond to the tier to subdue Little. Once subdued he was immediately taken to medical where it was noted he had a scratch and declined further treatment. As a result of the incident Little was charged and pled guilty to an inmate rule violation for assaulting Benson and Drill. Ultimately, he was charged criminally with assaulting the officers and found guilty and later, on appeal, pled guilty to assaulting Benson. The fact that Little was not convicted of assaulting Drill is not dispositive to his claim of excessive force.

The record before this Court demonstrates that neither officer used excessive force against Little. It is clear from the evidence that Little repeatedly refused correctional officers' orders, engaged in a verbal altercation with Benson, and that Drill perceived Little move in an aggressive manner toward Benson. The uncontroverted evidence demonstrates that Drill believed Little posed a risk of harm to Benson and Drill acted quickly to protect his fellow officer and maintain the safety and order of the institution. The record further demonstrates that Drill and Benson used only the amount necessary to subdue Little and Little's injury, if any, was de minimus. In sum, it appears that the force used by the officers was applied in a good faith effort to maintain and restore discipline and to protect both staff and other inmates. The Eighth Amendment claim therefore fails and Defendants Benson and Drill are entitled to summary judgment on this claim.

E.   **Denial of Medical Care**

Little baldly claims that his refusal of further medical treatment after the altercation was tantamount to Defendants denying him medical care. Little's claim of denial of medical care,

9

which is unsupported by any factual allegations and which is belied by the record, must be dismissed. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not satisfy Rule 8's basic pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The Eighth Amendment to the United States Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Generally, the amendment protects inmates against "inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citation omitted). This includes protection against the use of excessive force.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison

official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Little has failed to allege that he suffered an objectively serious medical issue. More importantly, Little has failed to allege facts supporting a claim that any of the named Defendants were personally involved in any denial of medical care. The record demonstrates that none of the named Defendants escorted Little to medical after the altercation and there are no allegations suggesting that any of the named Defendants in any way impeded his access to medical care. Little's claims regarding denial of medical care are dismissed.

### F.     Equal Protection

Little's claim that his rights to equal protection under the Fourteenth Amendment is also dismissed for failure to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "[T]o state a claim for violation of the [Equal Protection] Clause, a plaintiff must plausibly allege first 'that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Fauconier v. Clarke*, 966 F. 3d 265, 277 (4th Cir. 2020)( *quoting Martin v. Duffy*, 858 F. 3d 239, 252 (4th Cir.2017))

Little baldly claims that the altercation was racially motivated. However, he does not provide facts to support his claim. Nor does he provide any facts alleging that Defendants' conduct was the result of intentional or purposeful discrimination. Because the limited details

Little provides "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that [Little] is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As such, Little's Fourteenth Amendment claim must be dismissed.

### IV. Conclusion

By separate Order which follows, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment shall be **GRANTED**.[3]

February 13, 2025
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[3] The Court need not address Defendants' additional arguments in support of their Motion.

12